## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BANK OF AMERICA, NATIONAL ASSOCIATION, as indenture trustee, Custodian, and collateral agent for Ocala Funding, LLC,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for Colonial Bank and in its capacity as Receiver for Platinum Community Bank,**<br><br>    **Defendant.** | **Case 1:10-cv-01681**<br>**Judge James E. Boasberg** |

### ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Federal Deposit Insurance Corporation, in its capacity as receiver for Colonial Bank and Platinum Community Bank ("FDIC-R"), by counsel, answers Plaintiff's First Amended Complaint as follows:

The allegations set forth in the preamble of the First Amended Complaint make no affirmative allegation regarding ("FDIC-R"), and thus no response to these allegations is required. To the extent that the allegations of the preamble of the First Amended Complaint may be construed as affirmative allegations regarding FDIC-R, they are denied. Further, FDIC-R affirmatively denies that Plaintiff has standing to bring the claims alleged in the First Amended Complaint.

### Nature of the Case

1.      The FDIC-R admits only that Colonial and Platinum are under FDIC Receivership and denies the remaining allegations set forth in Paragraph 1 of the Complaint.

Specifically, the FDIC-R denies that the "Trustee" filed proofs of claim on behalf of Ocala Funding. The FDIC-R denies that the "Trustee" exhausted administrative remedies on behalf of Ocala Funding. The FDIC-R denies that the "Trustee" is authorized to pursue this lawsuit on Ocala Funding's behalf.

2.      FDIC-R is without sufficient information to admit or deny that the statements alleged in paragraph 2 of the First Amended Complaint have been made or what the content of any such alleged statement may be and those allegations are therefore denied.  Further, any such statements made by the individuals listed in Paragraph 2 of the First Amended Complaint speak for themselves. The FDIC-R denies the remaining allegations set forth in Paragraph 2 of the Complaint because they are legal conclusions.

3.      The FDIC-R denies the allegations contained in the first and fourth sentences of Paragraph 3 of the First Amended Complaint and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this Paragraph and those allegations are therefore denied.

4.      The FDIC-R denies that the "Trustee" filed any Proof of Claim on behalf of Ocala Funding. The FDIC-R affirmatively alleges that the Proofs of Claim referenced in Paragraph 4 of the First Amended Complaint speak for themselves. The FDIC-R denies the remaining allegations set forth in Paragraph 4 of the First Amended Complaint.

5.      The FDIC-R denies the allegations in the first sentence of Paragraph 5 of the First Amended Complaint.  The FDIC-R admits that it denied Plaintiff's claims in Notices of Disallowance and states that the Notices of Disallowance referenced in Paragraph 5 of the First Amended Complaint speak for themselves..

6.      The FDIC-R denies that the "Trustee" filed proofs of claim on behalf of Ocala Funding and denies the remaining allegations set forth in Paragraph 6 of the First Amended Complaint.

7.      The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 7 of the First Amended Complaint and those allegations are therefore denied.

8.      The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 8 of the First Amended Complaint and those allegations are therefore denied.

9.      The allegation of Paragraph 9 of the First Amended Complaint is a legal conclusion to which a response is not required.  To the extent that a response is deemed required, FDIC-R denies that Plaintiff has any rights to pursue any remedies against FDIC-R in the instant matter.

10.     The allegations of Paragraph 10 of the First Amended Complaint are legal conclusions to which a response is not required. To the extent that the allegations of Paragraph 10 of the First Amended Complaint may be interpreted as allegations of fact, FDIC-R lacks knowledge or information sufficient to form a belief as to the truth of these allegations and those allegations are therefore denied. The FDIC-R further denies that Plaintiff has any rights to pursue any remedies against FDIC-R in the instant matter, including a declaratory judgment.

### The Parties

11.     The FDIC-R admits only the allegations in the first sentence of Paragraph 11 of the First Amended Complaint and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 11 and those allegations are therefore denied.

12.     The FDIC-R admits the allegations set forth in Paragraph 12 of the First Amended Complaint.

13.     The FDIC-R admits the allegations set forth in Paragraph 13 of the First Amended Complaint.

14.     The FDIC-R admits the allegations set forth in Paragraph 14 of the First Amended Complaint.

### Jurisdiction

15.     The FDIC-R denies the allegations set forth in Paragraph 15 of the First Amended Complaint.

16.     The FDIC-R admits only that, if this Court possessed subject matter jurisdiction over this civil action, venue would be proper in, among other venues, the District of Columbia.

### Facts Common to All Causes of Action

17.     The FDIC-R admits only that Colonial was both a retail and commercial bank and avers that, as of June 30, 2009, Colonial Bank had total assets of approximately $25 billion and maintained 346 branches in Alabama, Florida, Georgia, Nevada, and Texas.  The FDIC-R denies all other allegations set forth in Paragraph 17 of the First Amended Complaint.

18.     The FDIC-R admits the allegations set forth in the first two sentences of Paragraph 18 of the First Amended Complaint and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this Paragraph and those allegations are therefore denied..

19.     The FDIC-R admits the allegations set forth in Paragraph 19 of the First Amended Complaint.

20.     The FDIC-R admits only that on July 31, 2009, Colonial Bank reported a "Tier I Leverage ratio" of 4.18% on June 30, 2009 and denies the remaining allegations set forth in Paragraph 20 of the First Amended Complaint.

21.     The FDIC-R admits only that on July 31, 2009, Colonial BancGroup issued a press release, which otherwise speaks for itself and which is accurately but incompletely quoted in the last sentence of paragraph 21.

22.     The FDIC-R admits only that the New York Times published an article which described agents of the F.B.I and the Treasury Department's Troubled Asset Relief Program executing a search warrant upon TBW and Colonial.  The FDIC-R denies that the described article was published August 4, 2009.  The FDIC-R further affirmatively alleges that the described article speaks for itself and denies each and every allegation of Paragraph 22 of the First Amended Complaint that is inconsistent with or contrary to the published article.

23.     The FDIC-R admits only that Colonial BancGroup disclosed on or about August 7, 2009, that it was the subject of a criminal investigation related to "alleged" accounting irregularities and that it disclosed the possibility of receivership.  The FDIC-R denies the remaining allegations set forth in Paragraph 23 of the First Amended Complaint.

24.     The FDIC-R admits the allegations set forth in Paragraph 24 of the First Amended Complaint.

25.     The FDIC-R admits only that in July 2008, TBW acquired a controlling interest in Platinum Bankshares Inc.; the FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 25 of the First Amended Complaint and those allegations are therefore denied.

26.     The FDIC-R admits the allegations set forth in Paragraph 26 of the First Amended Complaint.

27.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 27 of the First Amended Complaint.

28.     The FDIC-R, upon information and belief, admits the allegations in set forth in Paragraph 28 of the First Amended Complaint.

29.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 29 of the First Amended Complaint

30.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 30 of the First Amended Complaint.

31.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 31 of the First Amended Complaint.

32.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 32 of the First Amended Complaint.

33.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 33 of the First Amended Complaint.

34.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 34 of the First Amended Complaint and those allegations are therefore denied.

35.     The FDIC-R admits only that TBW maintained more than 116 bank accounts at Colonial and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 35 of the First Amended Complaint and those allegations are therefore denied.

36.     The FDIC-R admits the allegations set forth in Paragraph 36 of the First Amended Complaint.

37.     The FDIC-R admits the allegations set forth in Paragraph 37 of the First Amended Complaint.

38.     The FDIC-R admits the allegations set forth in Paragraph 38 of the First Amended Complaint.

39.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 39 of the First Amended Complaint and those allegations are therefore denied.

40.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 40 of the First Amended Complaint and those allegations are therefore denied.

41.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 41 of the First Amended Complaint and those allegations are therefore denied.

42.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 42 of the First Amended Complaint and those allegations are therefore denied.

43.     The FDIC-R admits that Colonial provided funding to TBW in 2002 and admits that Colonial purchased 99% participation interests in mortgages originated by TBW. The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 43 of the First Amended Complaint and those allegations are therefore denied.

44.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 44 of the First Amended Complaint and those allegations are therefore denied.

45.     The FDIC-R admits that TBW borrowed funds from Colonial and that certain borrowings became known as the "assignment of trade facility" ("AOT").  The FDIC-R also admits that the AOT involved Colonial's purchase of participation interests in trades held by TBW with respect to agency securities (both Freddie Mac and Ginnie Mae) and securities issued by private label issuers.

46.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 46 of the First Amended Complaint and those allegations are therefore denied.

47.     The FDIC-R admits that, as of its closing date, Colonial provided TBW with funding capacity in excess of $3 billion.

48.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 48 of the First Amended Complaint and those allegations are therefore denied.

49.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in the first sentence of Paragraph 49 of the First Amended Complaint and those allegations are therefore denied. The FDIC-R denies the remaining allegations set forth in Paragraph 49 of the First Amended Complaint.

50.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 50 of the First Amended Complaint and those allegations are therefore denied.

51.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 51 of the First Amended Complaint and those allegations are therefore denied.

52.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 52 of the First Amended Complaint and those allegations are therefore denied.

53.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 53 of the First Amended Complaint and those allegations are therefore denied.

54.     The FDIC-R admits only that it was provided the documents described in footnote 5 of the First Amended Complaint in or about the fall of 2009 and denies the remaining allegations in paragraph 54.

55.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 55 of the First Amended Complaint and those allegations are therefore denied.

56.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 56 of the First Amended Complaint and those allegations are therefore denied.

57.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 57 of the First Amended Complaint and those allegations are therefore denied.

58.     The FDIC-R admits only that the documents described in footnote 5 of the First Amended Complaint were signed by TBW, purportedly on Ocala Funding's behalf.

59.     The FDIC-R denies the allegations set forth in Paragraph 59 of the First Amended Complaint.

60.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 60 of the First Amended Complaint and those allegations are therefore denied; the FDIC-R further states that although "Purchase Agreement" appears to be a defined term, it is not defined in the Complaint; and affirmatively alleges that the "Purchase Agreement" speaks for itself and therefore denies each and every allegation of this paragraph.

61.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 61 of the First Amended Complaint and those allegations are therefore denied; the FDIC-R further states that although "Purchase

Agreement" appears to be a defined term, it is not defined in the First Amended Complaint; and affirmatively alleges that the "Purchase Agreement" speaks for itself and therefore denies each and every allegation of this paragraph.

62.     The FDIC-R denies the allegations set forth in the first sentence of Paragraph 62 of the First Amended Complaint, lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third and fourth sentences of Paragraph 62 of the First Amended Complaint and those allegations are therefore denied, and, upon information and belief, admits the allegations set forth in the second sentence of Paragraph 62 of the First Amended Complaint.

63.     The FDIC-R, upon information and belief, admits the allegations contained in the first sentence of Paragraph 63 of the First Amended Complaint and denies the remaining allegations set forth in Paragraph 63 of the First Amended Complaint.

64.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the June 15, 2010 indictment of Lee Bentley Farkas and the Government's June 16, 2010 Motion for Pre-Trial Detention of Lee Bentley Farkas, the Statement of Facts by Desiree Brown, the Statement of Facts by Teresa Kelly, and the Statement of Facts by Catherine Kissick (the "Government Pleadings").  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 64 of the First Amended Complaint and those allegations are therefore denied.

65.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference.  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this

manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 65 of the First Amended Complaint and those allegations are therefore denied.

66.     The FDIC-R admits that Bank of America transferred the funds referenced in Paragraph 66 of the First Amended Complaint and denies the remaining allegations set forth in Paragraph 66 of the First Amended Complaint.

67.     The FDIC-R admits that Bank of America transferred the funds referenced in Paragraph 67 of the First Amended Complaint and denies the remaining allegations set forth in Paragraph 67 of the First Amended Complaint.

68.     The FDIC-R denies the allegations set forth in Paragraph 68 of the First Amended Complaint.

69.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in Paragraph 69 are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference. The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. The FDIC-R admits that Colonial BancGroup applied for TARP funds but lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in the second sentence of Paragraph 69 of the First Amended Complaint and those allegations are therefore denied.

70.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings.  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 70 of the First Amended Complaint and those allegations are therefore denied.

71.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference.  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. Stating further, the FDIC-R, upon information and belief, admits that the United States Treasury conditionally approved $533 million in TARP funding to Colonial BancGroup which was first required to raise $300 million.

72.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference.  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 72 of the First Amended Complaint and those allegations are therefore denied.

73.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference.  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 73 of the First Amended Complaint and those allegations are therefore denied.

74.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference.  The FDIC-R states that the Government Pleadings speak for themselves and further states that incorporation by reference in this

manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 74 of the First Amended Complaint and those allegations are therefore denied.

75.     The FDIC-R admits the allegations set forth in Paragraph 75 of the First Amended Complaint and affirmatively alleges that Bank of America made that transfer.

76.     The FDIC-R admits the allegations set forth in Paragraph 76 of the First Amended Complaint and affirmatively alleges that Bank of America made that transfer.

77.     The FDIC-R denies the allegations set forth in Paragraph 77 of the First Amended Complaint.

78.     The FDIC-R admits that Bank of America wired the $12.2 million specified in the first sentence of Paragraph 78 of the First Amended Complaint and denies the remaining allegations contained in the first sentence of Paragraph 78 of the First Amended Complaint. The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 78 of the First Amended Complaint and those allegations are therefore denied.

79.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 79 of the First Amended Complaint and those allegations are therefore denied.

80.     The FDIC-R admits the allegations set forth in Paragraph 80 of the First Amended Complaint.

81.     The FDIC-R denies the allegations set forth in Paragraph 81 of the First Amended Complaint.

82.     Bank of America, in footnote 6 of the First Amended Complaint, asserts that the facts alleged in this paragraph are taken from the Government Pleadings and attempts to incorporate the Government Pleadings by reference.  The FDIC-R states that the Government

Pleadings speak for themselves and further states that incorporation by reference in this manner is improper. The FDIC-R further lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 82 of the First Amended Complaint and those allegations are therefore denied.

83.    The FDIC-R denies the allegations set forth in Paragraph 83 of the First Amended Complaint.

84.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 84 of the First Amended and those allegations are therefore denied.

85.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 85 of the First Amended Complaint and those allegations are therefore denied.

86.    The FDIC-R denies the allegations set forth in Paragraph 86 of the First Amended Complaint.

87.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 87 of the First Amended Complaint and those allegations are therefore denied.

88.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 88 of the First Amended Complaint and those allegations are therefore denied.

89.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 89(a)-(c) of the First Amended Complaint and those allegations are therefore denied.

90.    The FDIC-R is unaware of what communications "were made available to plaintiff" and lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 90(a)-(g) of the First Amended Complaint and those allegations are therefore denied.

91.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 91 of the First Amended Complaint and those allegations are therefore denied.

92.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 92 of the First Amended Complaint and those allegations are therefore denied.

93.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 93 of the First Amended Complaint and those allegations are therefore denied.

94.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 94 of the First Amended Complaint and those allegations are therefore denied.

95.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 95 of the First Amended Complaint and those allegations are therefore denied.

96.     Upon information and belief, the FDIC-R admits the allegations set forth in Paragraph 96 of the First Amended Complaint.

97.     The FDIC-R admits the allegations set forth in Paragraph 97 of the First Amended Complaint.

98.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 98 of the First Amended Complaint and those allegations are therefore denied.

99.     The FDIC-R, upon information and belief, admits the allegations set forth in Paragraph 99 of the First Amended Complaint.

100.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 100 of the First Amended Complaint and those allegations are therefore denied.

101.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 101 of the First Amended Complaint and those allegations are therefore denied.

102.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 102 of the First Amended Complaint and those allegations are therefore denied.

103.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 103 of the First Amended Complaint and those allegations are therefore denied.

104.    The FDIC-R admits that Bank of America commenced suit in the United States District Court for the Southern District of Florida, Miami Division, against Colonial and others and denies the remaining allegations set forth in Paragraph 104 of the First Amended Complaint.

105.    The FDIC-R admits that the State of Alabama Banking Department appointed FDIC as receiver of Colonial.

106.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegation that Ocala Funding lacks sufficient assets to pay of and those allegations are therefore denied and denies the remaining allegations set forth in Paragraph 106 of the First Amended Complaint.

107.    The FDIC-R admits the allegations set forth in Paragraph 107 of the First Amended Complaint.

108.    The FDIC-R admits the allegations set forth in Paragraph 108 of the First Amended Complaint.

109.    The FDIC-R admits that, as of September 4, 2009, it estimated the cost of the Platinum failure to its Deposit Insurance Fund to be approximately $114.3 million.

110.    The FDIC-R admits that Platinum failed and was placed into FDIC Receivership and denies the remaining allegations set forth in Paragraph 110 of the First Amended Complaint.

111.    The FDIC-R admits the allegations set forth in Paragraph 111 of the First Amended Complaint.

112.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 112 of the First Amended Complaint and those allegations are therefore denied.

113.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 113 of the First Amended Complaint and those allegations are therefore denied.

114.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 114 of the First Amended Complaint and those allegations are therefore denied.

115.    The FDIC-R denies the allegations set forth in Paragraph 115 of the First Amended Complaint.

116.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 116 of the First Amended Complaint and those allegations are therefore denied.

117.    The FDIC-R denies the allegations set forth in Paragraph 117 of the First Amended Complaint.

118.    The FDIC-R admits that TBW filed an Asset Reconciliation Report but states that it speaks for itself and that it is improper to selectively incorporate portions from that Report.

119.    The FDIC-R admits that it filed a "Statement of the Federal Deposit Insurance Corporation, as Receiver of Colonial Bank, Montgomery, Alabama, N.A., in Support of Debtor's Final Reconciliation Report" in the TBW Bankruptcy in the United States Bankruptcy Court for the Middle District of Florida in which it stated, *inter alia*, "With respect to the Reconciliation, the FDIC-R has reviewed the Debtor's procedures and has not found any errors in the Debtor's work product;" "In parallel to the Debtor's efforts, the FDIC-R processed and created databases equal and commensurate to the Debtor's in order to confirm the accuracy of the Debtor's conclusions in the Final Report. The FDIC-R did not identify any information which was inconsistent with the Final Report;" and "Upon its review, and except as detailed above, the FDIC-R concurs with the Final Report." Stating further, the FDIC-R affirmatively alleges that the Statement in Support of the Reconciliation Report speaks for itself and therefore denies each and every allegation of Paragraph 119 of the First Amended Complaint.

120.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 120 of the First Amended Complaint and those allegations are therefore denied.

121.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 121 of the First Amended Complaint and those allegations are therefore denied.

122.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 122 of the First Amended Complaint and those allegations are therefore denied.

123.     The FDIC-R admits the allegation that Bank of America filed a proof of claim in the Colonial receivership, affirmatively alleges that "Exhibit A" speaks for itself and denies each and every remaining allegation set forth in Paragraph 123 of the First Amended Complaint.

124.     The FDIC-R admits the allegation that Bank of America filed a proof of claim in the Colonial receivership, affirmatively alleges that "Exhibit A" speaks for itself, and denies the remaining allegations set forth in Paragraph 124 of the First Amended Complaint.

125.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 125 of the First Amended Complaint and those allegations are therefore denied; the FDIC-R affirmatively denies that Plaintiff is entitled to any recovery whatsoever.

126.     The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 126 of the First Amended Complaint and those allegations are therefore denied.

127.     12 U.S.C. § 1821(d)(5)(A)(i) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 127 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 127 of the First Amended Complaint.

128.     The FDIC-R admits the allegation that Bank of America and the FDIC-R agreed to a 90-day extension but denies the remaining allegations set forth in Paragraph 128 of the First Amended Complaint.

129.     12 U.S.C. § 1821(d)(5)(A)(iv) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 129 of the Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 129 of the First Amended Complaint.

130.     The FDIC-R admits the allegation that it notified Bank of America that its claims were disallowed and further states that "Exhibit B" speaks for itself.  The FDIC-R denies each and every allegation of Paragraph 130 of the First Amended Complaint that is inconsistent with or contrary to "Exhibit B."

131.     The FDIC-R admits the allegation that it notified Bank of America that its claims were disallowed and further states that "Exhibit B" speaks for itself and the FDIC-R denies each and every allegation of Paragraph 131 of the First Amended Complaint.

132.     The FDIC-R admits the allegations set forth in Paragraph 132 of the First Amended Complaint and further states that "Exhibit B" speaks for itself and the FDIC-R denies each and every allegation of Paragraph 132 of the First Amended Complaint.

133.     12 U.S.C. § 1821(d)(2)(H) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 133 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 133 of the First Amended Complaint and affirmatively denies that Bank of America is entitled to payment pursuant to this code section.

134.     The FDIC-R denies the allegations set forth in Paragraph 134 of the First Amended Complaint.

135.     12 U.S.C. § 1821(d)(6)(A) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 135 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining

allegations set forth in Paragraph 135 of the First Amended Complaint and affirmatively denies that Bank of America is entitled to payment pursuant to this code section.

136.    The described notice speaks for itself and the FDIC-R denies each and every allegation of Paragraph 136 of the First Amended Complaint that is inconsistent with or contrary to that notice. Further, the FDIC-R denies that the notice "directs" Plaintiff to do anything.

137.    The FDIC-R admits the allegation that Bank of America filed a proof of claim in the Platinum receivership, affirmatively alleges that "Exhibit C" speaks for itself and denies the remaining allegations set forth in Paragraph 137 of the First Amended Complaint.

138.    The FDIC-R admits the allegation that Bank of America filed a proof of claim in the Platinum receivership, affirmatively alleges that "Exhibit C" speaks for itself and denies the remaining allegations set forth in Paragraph 138 of the First Amended Complaint.

139.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 139 of the First Amended Complaint and those allegations are therefore denied; the FDIC-R further affirmatively denies that Plaintiff is entitled to any recovery whatsoever.

140.    The FDIC-R lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 140 of the First Amended Complaint and those allegations are therefore denied.

141.    12 U.S.C. § 1821(d)(5)(A)(i) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 141 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 141 of the First Amended Complaint and affirmatively denies that Bank of America is entitled to payment pursuant to this code section.

142.    The FDIC-R admits the allegation that Bank of America and the FDIC-R agreed to a 90-day extension but denies the remaining allegations set forth in Paragraph 142 of the First Amended Complaint.

143.    12 U.S.C. § 1821(d)(5)(A)(iv) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 143 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 143 of the First Amended Complaint.

144.    The FDIC-R admits the allegation that it notified Bank of America that its claims were disallowed and further states that "Exhibit D" speaks for itself. The FDIC-R denies each and every allegation of Paragraph 144 of the First Amended Complaint that is inconsistent with or contrary to "Exhibit D."

145.    The FDIC-R admits the allegation that it notified Bank of America that its claims were disallowed and further states that "Exhibit D" speaks for itself and the FDIC-R denies each and every allegation of Paragraph 145 of the First Amended Complaint that is inconsistent with or contrary to "Exhibit D."

146.    The FDIC-R states that "Exhibit D" speaks for itself and the FDIC-R denies each and every allegation of Paragraph 146 of the First Amended Complaint that is inconsistent with or contrary to "Exhibit D."

147.    12 U.S.C. § 1821(d)(2)(H) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 147 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 147 of the First Amended Complaint and affirmatively denies that Bank of America is entitled to payment pursuant to this code section.

148.    The FDIC-R denies the allegations set forth in Paragraph 148 of the First Amended Complaint.

149.    12 U.S.C. § 1821(d)(6)(A) speaks for itself, requires no response, and the FDIC-R denies each and every allegation of Paragraph 149 of the First Amended Complaint that is inconsistent with or contrary to that code section. The FDIC-R denies the remaining allegations set forth in Paragraph 149 of the First Amended Complaint and affirmatively denies that Bank of America is entitled to payment pursuant to this code section.

150.    The described notice speaks for itself and the FDIC-R denies each and every allegation of Paragraph 150 of the First Amended Complaint that is inconsistent with or contrary to that notice. Stating further, the FDIC-R denies that the notice "directs" the Plaintiff to do anything.

151.    The FDIC-R admits the allegation that Bank of America filed this lawsuit but denies the remaining allegations set forth in Paragraph 151 of the First Amended Complaint.

## FIRST CAUSE OF ACTION

### (Determination of the Trustee's Colonial Proof of Claim)

152.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

153.    The FDIC-R denies the allegations set forth in Paragraph 153 of the First Amended Complaint.

154.    The FDIC-R denies the allegations set forth in Paragraph 154 of the First Amended Complaint.

155.    The FDIC-R denies the allegations set forth in Paragraph 155 of the First Amended Complaint.

## SECOND CAUSE OF ACTION

### (Declaration that Disallowance of the Trustee's Colonial Proof of Claim is Void)

156.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

157.    The FDIC-R denies the allegations set forth in Paragraph 157 of the First Amended Complaint.

158.    The FDIC-R denies the allegations set forth in Paragraph 158 of the First Amended Complaint.

159.    The FDIC-R denies the allegations set forth in Paragraph 159 of the First Amended Complaint.

## THIRD CAUSE OF ACTION

### (Determination of the Trustee's Platinum Proof of Claim)

160.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

161.    The FDIC-R denies the allegations set forth in Paragraph 161 of the First Amended Complaint.

162.    The FDIC-R denies the allegations set forth in Paragraph 162 of the First Amended Complaint.

163.    The FDIC-R denies the allegations set forth in Paragraph 163 of the First Amended Complaint.

164.    The FDIC-R denies the allegations set forth in Paragraph 164 of the First Amended Complaint.

## FOURTH CAUSE OF ACTION

### (Declaration that Disallowance of the Trustee's Platinum Proof of Claim is Void)

165.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

166.    The FDIC-R denies the allegations set forth in Paragraph 166 of the First Amended Complaint.

167.     The FDIC-R denies the allegations set forth in Paragraph 167 of the First Amended Complaint.

168.     The FDIC-R denies the allegations set forth in Paragraph 168 of the First Amended Complaint.

## FIFTH CAUSE OF ACTION

### (Fraud by Colonial)

169.     The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

170.     The FDIC-R denies the allegations set forth in Paragraph 170 of the First Amended Complaint.

171.     The FDIC-R denies the allegations set forth in Paragraph 171 of the First Amended Complaint.

172.     The FDIC-R denies the allegations set forth in Paragraph 172 of the First Amended Complaint.

173.     The FDIC-R denies the allegations set forth in Paragraph 173 of the First Amended Complaint.

174.     The FDIC-R denies the allegations set forth in Paragraph 174 of the First Amended Complaint.

175.     The FDIC-R denies the allegations set forth in Paragraph 175 of the First Amended Complaint.

176.     The FDIC-R denies the allegations set forth in Paragraph 176 of the First Amended Complaint.

## SIXTH CAUSE OF ACTION

### (Civil Conspiracy by Colonial and Platinum)

177.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

178.    The FDIC-R denies the allegations set forth in Paragraph 178 of the First Amended Complaint.

179.    The FDIC-R denies the allegations set forth in Paragraph 179 of the First Amended Complaint.

180.    The FDIC-R denies the allegations set forth in Paragraph 180 of the First Amended Complaint.

181.    The FDIC-R denies the allegations set forth in Paragraph 181 of the First Amended Complaint.

182.    The FDIC-R denies the allegations set forth in Paragraph 182 of the Complaint.

183.    The FDIC-R denies the allegations set forth in Paragraph 183 of the First Amended Complaint.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment/Constructive Trust by Colonial and Platinum)

184.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

185.    The FDIC-R denies the allegations set forth in Paragraph 185 of the First Amended Complaint.

186.    The FDIC-R denies the allegations set forth in Paragraph 186 of the First Amended Complaint.

187.     The FDIC-R denies the allegations set forth in Paragraph 187 of the First Amended Complaint.

188.     The FDIC-R denies the allegations set forth in Paragraph 188 of the First Amended Complaint.

189.     The FDIC-R denies the allegations set forth in Paragraph 189 of the First Amended Complaint.

190.     The FDIC-R denies the allegations set forth in Paragraph 190 of the First Amended Complaint.

191.     The FDIC-R denies the allegations set forth in Paragraph 191 of the First Amended Complaint.

192.     The FDIC-R denies the allegations set forth in Paragraph 192 of the First Amended Complaint.

193.     The FDIC-R denies the allegations set forth in Paragraph 193 of the First Amended Complaint.

194.     The FDIC-R denies the allegations set forth in Paragraph 194 of the First Amended Complaint.

195.     The FDIC-R denies the allegations set forth in Paragraph 195 of the First Amended Complaint.

196.     The FDIC-R denies the allegations set forth in Paragraph 196 of the First Amended Complaint.

197.     The FDIC-R denies the allegations set forth in Paragraph 197 of the First Amended Complaint.

198.     The FDIC-R denies the allegations set forth in Paragraph 198 of the First Amended Complaint.

199.    The FDIC-R denies the allegations set forth in Paragraph 199 of the First Amended Complaint.

200.    The FDIC-R denies the allegations set forth in Paragraph 200 of the First Amended Complaint.

## EIGHTH CAUSE OF ACTION

### (Conversion by Colonial and Platinum)

201.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

202.    The FDIC-R denies the allegations set forth in Paragraph 202 of the First Amended Complaint.

203.    The FDIC-R denies the allegations set forth in Paragraph 203 of the First Amended Complaint.

204.    The FDIC-R denies the allegations set forth in Paragraph 204 of the First Amended Complaint.

205.    The FDIC-R denies the allegations set forth in Paragraph 205 of the First Amended Complaint.

206.    The FDIC-R denies the allegations set forth in Paragraph 206 of the First Amended Complaint.

207.    The FDIC-R denies the allegations set forth in Paragraph 207 of the First Amended Complaint.

208.    The FDIC-R denies the allegations set forth in Paragraph 208 of the First Amended Complaint.

209.    The FDIC-R denies the allegations set forth in Paragraph 209 of the First Amended Complaint.

210.     The FDIC-R denies the allegations set forth in Paragraph 210 of the First Amended Complaint.

211.     The FDIC-R denies the allegations set forth in Paragraph 211 of the First Amended Complaint.

212.     The FDIC-R denies the allegations set forth in Paragraph 212 of the First Amended Complaint.

213.     The FDIC-R denies the allegations set forth in Paragraph 213 of the First Amended Complaint.

214.     The FDIC-R denies the allegations set forth in Paragraph 214 of the First Amended Complaint.

215.     The FDIC-R denies the allegations set forth in Paragraph 215 of the First Amended Complaint.

216.     The FDIC-R denies the allegations set forth in Paragraph 216 of the First Amended Complaint.

217.     The FDIC-R denies the allegations set forth in Paragraph 217 of the First Amended Complaint.

## NINTH CAUSE OF ACTION

### (Actual Fraudulent Transfers by Colonial and Platinum)

218.     The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

219.     The FDIC-R denies the allegations set forth in Paragraph 219 of the First Amended Complaint.

220.     The FDIC-R denies the allegations set forth in Paragraph 220 of the First Amended Complaint.

221.    The FDIC-R denies the allegations set forth in Paragraph 221 of the First Amended Complaint.

222.    The FDIC-R denies the allegations set forth in Paragraph 222 of the First Amended Complaint.

223.    The FDIC-R denies the allegations set forth in Paragraph 223 of the First Amended Complaint.

224.    The FDIC-R denies the allegations set forth in Paragraph 224 of the First Amended Complaint.

225.    The FDIC-R denies the allegations set forth in Paragraph 225 of the First Amended Complaint.

226.    The FDIC-R denies the allegations set forth in Paragraph 226 of the First Amended Complaint.

## TENTH CAUSE OF ACTION

### (Constructive Fraudulent Transfers by Colonial and Platinum)

227.    The FDIC-R repeats and realleges the responses contained above, as if fully set forth herein.

228.    The FDIC-R denies the allegations set forth in Paragraph 228 of the First Amended Complaint.

229.    The FDIC-R denies the allegations set forth in Paragraph 229 of the First Amended Complaint.

230.    The FDIC-R denies the allegations set forth in Paragraph 230 of the First Amended Complaint.

231.    The FDIC-R denies the allegations set forth in Paragraph 231 of the First Amended Complaint.

232.    The FDIC-R denies the allegations set forth in Paragraph 232 of the First Amended Complaint.

233.    Paragraph 233 of the First Amended Complaint states a hypothetical and therefore requires no answer. To the extent an answer is required, the FDIC-R denies the allegations set forth in Paragraph 233 of the First Amended Complaint.

234.    The FDIC-R denies the allegations set forth in Paragraph 234 of the First Amended Complaint.

235.     The FDIC-R denies the allegations set forth in Paragraph 235 of the First Amended Complaint. To the extent the paragraphs purport to state a legal conclusion, no response is required.  Further, the FDIC-R affirmatively avers that Plaintiff is not entitled to any relief whatsoever.

236.    The FDIC-R denies each and every allegation of the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

These defenses are asserted without conceding the burden of proof to any of the following, and without waiving the right to have the Plaintiff present prima facie evidence in support of each and every cause of action alleged against the FDIC-R. The FDIC-R also reserves the right to add additional defenses as appropriate.

### FIRST AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred because Plaintiff has no standing.

### SECOND AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

All of Plaintiff's claims are barred because this Court lacks subject matter jurisdiction due to Ocala Funding's failure to exhaust administrative remedies.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims filed on behalf of Bank of America are barred because this Court lacks subject matter jurisdiction due to Bank of America's failure to exhaust administrative remedies.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because no Court may review the FDIC-R's determination to disallow a claim.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred because they are based on alleged agreements which are not in writing, contemporaneously executed by the depository institution and any person claiming an adverse interest thereunder approved by the institution's board of directors or its loan committee with approval noted in the minutes of the board or committee, and continuously maintained as an official record of the depository institution from the time of its execution.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery because no Court may take any action to restrain or affect the exercise of powers or functions of the FDIC as a receiver.

### EIGHTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred, in whole or in part, on account of Plaintiff's failure to include them in any proof of claim.

**NINTH AFFIRMATIVE DEFENSE**

Some or all of Plaintiff's claims are barred, in whole or in part, because Plaintiff seeks equitable relief which the Court cannot grant.

**TENTH AFFIRMATIVE DEFENSE**

As explained in greater detail in the FDIC-R's motion to dismiss BoA's complaint, Plaintiff lacks capacity to bring some or all of its claims as a result of its failure to exhaust administrative remedies.

**ELEVENTH AFFIRMATIVE DEFENSE**

As explained in greater detail in the FDIC-R's motion to dismiss BoA's complaint, some or all of Plaintiff's claims are barred because Plaintiff failed to exhaust administrative remedies and therefore failed to satisfy conditions precedent to filing this Complaint.

**TWELFTH AFFIRMATIVE DEFENSE**

As explained in greater detail in the FDIC-R's motion to dismiss BoA's complaint, some or all of Plaintiff's claims are barred because Plaintiff is not the real party in interest.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Some or all of Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to state a claim upon which relief can be granted.

**FOURTEENTH AFFIRMATIVE DEFENSE**

The Plaintiff is barred from recovery because the Plaintiff or one or more parties through which the Plaintiff claims were *in pari delicto* as to the actions of which the Plaintiff complains.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Some or all of the Plaintiff's causes of actions are barred by the doctrine of unclean hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

Some or all of the Plaintiff's causes of actions are barred by the doctrine of estoppel.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Some or all of the Plaintiff's causes of actions are barred by the doctrine of waiver.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims and causes of action are barred to the extent the Plaintiff has failed to mitigate damages, if any.

## NINETEENTH AFFIRMATIVE DEFENSE

Some or all of the Plaintiff's claims and/or the relief sought thereby are barred by laches.

## TWENTIETH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred because Plaintiff has an adequate remedy at law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's unjust enrichment claims are barred because of the presence of written contracts concerning the same subject matter.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred because Plaintiff has suffered no legally cognizable damages proximately caused by any conduct of the FDIC-R. In addition, Plaintiff is required to set off against such alleged damages any amounts otherwise recovered from the FDIC-R.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred, in whole or in part, by Plaintiff's approval and ratification of the conduct on which the claims are based.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The FDIC-R pleads the defenses of contemporaneous exchange for reasonably equivalent value; payments made in the ordinary course of business and on ordinary business terms; "new value"; lack of actual intent to hinder, delay, or defraud any creditor; and amounts of subsequent credit and unpaid.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims have been or will be discharged, waived, released, estopped or rendered moot as a result of the acts, pleadings, orders, settlements, and any other related occurrences in the chapter 11 bankruptcy of Taylor, Bean & Whitaker Mortgage Corporation, pending in the U.S. Middle District of Florida, Case No. 09-7047.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for actual and constructive fraud are barred, in whole or in part, because the alleged transactions involved neither a transfer nor an obligation, Ocala did not have unreasonably small capital and was able to pay its debts as they came due, BoA was not a creditor to the FDIC-R as a debtor, BoA was not a creditor of Ocala, Colonial and Platinum were not transferees, FDIC-R was a second transferee who received the asset in good faith and for value, and the FDIC-R was a third or subsequent transferee or oblige who received the alleged asset in good faith.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's unjust enrichment claims are barred because the FDIC-R did not engage in any inequitable act or acts that would make the receipt of any alleged benefits unjust.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred, in whole or in part, on account of Plaintiff's contributory negligence.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred, in whole or in part, on account of Plaintiff's contributory fraud, including the conversion of certain loans and loan proceeds from Ocala Funding. *See BNP Paribas Mortgage Corp. v. Bank of America, N.A.*, 10-cv-8630 (S.D.N.Y.), Docket No. 1.

WHEREFORE, the FDIC-R requests that the Plaintiff's Complaint and all claims and causes of action contained therein be dismissed with prejudice and on the merits; that the Plaintiff receive nothing thereby; and that the FDIC-R receive such relief as is appropriate, including, to the extent recoverable, costs, attorneys' fees, all rights to indemnification, and such other and further relief as is just.

## <u>COUNTERCLAIMS</u>

Counterclaim Plaintiff Federal Deposit Insurance Corporation, as Receiver for Colonial Bank ("FDIC-R") and by counsel, hereby presents its counterclaims against Counterclaim Defendant Bank of America, National Association ("BOA").

### Statement of the Case

1. These counterclaims arise out of BOA's position as the middleman for the sorts of transactions that caused and contributed to the worst financial collapse the United States has endured since the Great Depression.  As the middleman, BOA chose to accept incompatible contractual and fiduciary duties, and chose to breach its duties to Colonial in myriad ways.

2. As the below allegations will make clear, BOA agreed with Colonial Bank ("Colonial") to accept and hold Colonial's assets as a bailee, agreed to act as Colonial's agent and fiduciary, and agreed that it did not have and would not hold any interest adverse to Colonial in regard to its assets.

3.     However, BOA had also agreed at the same time to accept similar duties to other entities in regard to these same assets, essentially serving two masters in regard to the same property; this circumstance created an obvious potential conflict of interest.

4.     So long as those conflicts remained potential and not actual conflicts, BOA sat in the seemingly enviable possession of getting paid multiple times for doing the same work — holding assets as an agent and fiduciary.

5.     However, starting in late 2008, BOA failed to monitor the assets as it was required to for both masters.  Indeed, BOA abdicated its duties to both masters by accepting Colonial's assets subject to a bailment, while at the same treating them as security for its other masters, despite failing to pay Colonial.  Not only was Colonial not paid, but BOA also executed demonstrably false documents — which indicated that BOA had rights in the loans and purported to strip Colonial of its ownership rights — in order to sell the loans to Freddie Mac.  It was only after Colonial's loans were sold to Freddie Mac that Colonial was paid back for its loans.  In this way, BOA engaged in a timing game with Colonial's assets, which resulted in multiple parties believing they owned the same loans and the ultimate loss of 4,808 loans by Colonial.

6.     When Colonial's financial health became doubtful in July and August of 2009, and when it was reported in the nationwide press that Colonial was under investigation by federal authorities, upon information and belief it became clear to BOA that it could be caught in the middle of its conflicting obligations—the potential conflict of interest had become actual.

7.     At this juncture, BOA's continual breaches in regard to Colonial were laid bare. When Colonial was placed in receivership in August 2009, 4,808 loans had been transmitted by Colonial to BOA and were purchased by Freddie Mac , but BOA had never paid Colonial for their sale.

8.      The collapse of Colonial in August 2009 set in motion the events that have led to this and other lawsuits and have evidenced a clear and uncompromising fact:  BOA breached each and every duty it contracted with Colonial to assume.

**Factual Background**

9.      Colonial Bank ("Colonial") was a warehouse mortgage lender that financed mortgages originated and purchased by (among others) Taylor, Bean & Whitaker ("TBW"), the former largest non-bank mortgage originator in the United States.

10.     As a warehouse mortgage lender, Colonial provided to TBW the money that TBW then lent to home buyers at the closing table.

11.     Pursuant to Colonial's warehouse line to TBW, Colonial purchased a 99% participation interest in each loan from TBW, which Colonial held until the loans could be sold to a take-out purchaser in the secondary market (the "Participated Mortgage Loans").  TBW retained a 1% participation interest in the Participated Mortgage Loans.

12.     After advancing the money to TBW, Colonial, post-closing, received the Participated Mortgage Loans.

13.     As the United States' housing bubble grew and TBW's other sources of credit dried up, TBW sought additional sources of funding with which to originate and fund even more mortgage loans.

14.     One way in which TBW obtained such additional funding was through the creation in 2005 of a subsidiary commercial paper conduit named Ocala Funding, LLC ("Ocala").

15.     Ocala raised capital with which to fund additional TBW loan originations by issuing an asset-backed commercial paper facility—essentially borrowing money through notes secured by Ocala's loans and cash.

16.     The assets backing this paper and functioning as collateral were mortgage loans which

        Ocala was to purchase from Colonial, buying Colonial's 99% participation interest,

        and, in so doing, effectively paying back the warehouse line originally extended to

        TBW.

17.     Once Ocala owned the loans, and Colonial had received payment for its 99% interest,

        Ocala was to sell the loans to Freddie Mac.  The proceeds of these sales to Freddie

        Mac were to be used to re-pay the loans evidenced by the asset-backed commercial

        paper or to purchase additional loans from Colonial.

18.     Ocala's bank accounts were held at BOA.

19.     The two purchasers of the asset-backed commercial paper issued by Ocala were

        Deutsche Bank and BNP Paribas. *See,* BOA First Amended Complaint ("FAC"), ¶ 3.

20.     The Participated Mortgage Loans and their associated documents—that is, the

        physical files constituting the assets—had to be transferred from the possession of

        Colonial to the possession of Ocala in order for Ocala to buy these Loans and hold

        them as assets backing the commercial paper sold to Deutsche Bank and BNP Paribas.

21.     The method by which these transfers were accomplished was the use of a custodian,

        bailee, and agent—in short, a middleman:  BOA.[1]

22.     In or about July 2008, Colonial, TBW, and BOA entered into a contract entitled

        "Custodial Agreement."  Pursuant to the Custodial Agreement, BOA agreed to accept

        Colonial's Participated Mortgage Loans, hold them for the benefit of Colonial, and

        either return them to Colonial or remit to Colonial the payment for the Participated

        Mortgage Loans using funds supplied by Ocala.

---

[1] LaSalle Bank, N.A. ("LaSalle") was the original custodian, bailee, and agent for Colonial in regard to the Participated Mortgage Loans. Although BOA acquired LaSalle in 2007 and became the successor by merger to the rights and obligations of LaSalle, LaSalle continued to act as bailee, custodian and agent. Hereinafter, "BOA" encompasses both LaSalle and BOA.

23.    The Custodial Agreement provided, among other things, for the sale, administration, and custody of the Participated Mortgage Loans transferred from Colonial to Ocala, as well as for the protection of Colonial's ownership of the Participated Mortgage Loans and the payment for those interests upon their sale to Ocala. *See*, Custodial Agreement by and among Colonial Bank, TBW, and LaSalle Bank, N.A., ("Custodial Agreement").

24.    The Custodial Agreement establishes BOA as the agent and bailee of Colonial. Custodial Agreement, ¶ 2.

25.    The Custodial Agreement obligates BOA, in its capacity as agent and bailee, to hold the documents associated with each Participated Mortgage Loan for the exclusive use and benefit of Colonial and for the purposes of perfecting Colonial's ownership interests in the Participated Mortgage Loans. Custodial Agreement, ¶ 4(B).

26.    The Custodial Agreement obligates BOA to segregate and maintain continuous custody of all mortgage documents associated with the Participated Mortgage Loans. Custodial Agreement, ¶ 4(B).

27.    The Custodial Agreement obligates BOA to exercise reasonable care in the custody and preservation of the items it receives as Custodian. Custodial Agreement, ¶ 4(D).

28.    The Custodial Agreement obligates BOA to return to Colonial all documents associated with any Participated Mortgage Loan which are not purchased by Ocala within six business days of BOA's receipt of those documents. Custodial Agreement, ¶ 7(A).

29.    By executing the Custodial Agreement, BOA represented and warranted that it did not hold at the time of execution, and during the existence of the Custodial Agreement would not hold, any interest adverse to Colonial, by way of security or otherwise, in

any Participated Mortgage Loan and further waived and released any such interest it may have in any Participated Mortgage Loan. Custodial Agreement, ¶ 17(K).

30.     The Custodial Agreement provided that Participated Mortgage Loans transferred to BOA would be delivered with a Loan Transmittal Sheet. Custodial Agreement, ¶ 3.

31.     In day to day practice, Colonial routinely transferred its Participated Mortgage Loans and associated documents to BOA under cover of and pursuant to a standard Bailee Letter, utilizing that Bailee Letter as a Loan Transmittal Sheet.

32.     Colonial's standard Bailee Letter contained an "inconsistent provisions" clause which provided that, in the event of any inconsistency between the Bailee Letter and the provisions of any other instrument or document in connection with the Participated Loans, the provisions of the Bailee Letter would control.

33.     Pursuant to the Bailee Letter, BOA agreed and was bound to, among other things: (a) hold in trust as Colonial's bailee the Participated Mortgage Loans and all associated documents transferred; (b) not release or deliver or authorize the release or delivery of any of the Participated Mortgage Loans or associated documents to any person if doing so would jeopardize Colonial's ownership; (c) within 45 days, either remit the Takeout Amount[2] of the Participated Mortgage Loans to Colonial or to return the Participated Mortgage Loans and associated documents to Colonial; (d) deliver the Takeout Amount or the Participated Mortgage Loans and associated documents only to Colonial pursuant to the terms of the Bailee Letter; (e) subordinate any interest BOA had in the Participated Mortgage Loans and/or the associated documents the interests and ownership of Colonial; (f) not exercise any right with respect to the Participated Mortgage Loans without the prior written consent of Colonial; and (g)

---

[2] The Bailee Letter defines the Takeout Amount as the purchase price to be paid by the buyer of the Participated Mortgage Loan.

not honor any requests or instructions from TBW related to the Participated Mortgage Loans.

34.  In return for providing all these services to Colonial, upon information and belief, BOA was paid fees.

35.  At the same time, BOA had also agreed with Ocala, Deutsche Bank, and BNP Paribas to function as their indenture trustee, collateral agent, depositary and custodian for the assets backing the commercial paper that Ocala had issued and that Deutsche Bank and BNP Paribas had purchased.  In return for providing these services to Ocala, Deutsche Bank and BNP Paribas, upon information and belief, BOA was paid fees.

36.  Between June 2, 2009 and August 4, 2009, Colonial transmitted to BOA pursuant to the Custodial Agreement and Bailee Letters at least 4,808 Participated Mortgage Loans.

37.  The total value of Colonial's interest in these 4,808 Participated Mortgage Loans is approximately $898,873,958.

38.  The 4,808 Participated Mortgage Loans were sold to Freddie Mac and the related mortgage files were sent by BOA to Colonial's Trust Department, to hold as custodian for Freddie Mac.

39.  Despite transmitting the 4,808 Participated Mortgage Loans to BOA pursuant to Bailee Letters and subject to the Custodial Agreement, Colonial never received payment for its ownership interest in any of these Loans.

40.  Ocala was intended to function in the following manner:  Colonial would send its Participated Mortgage Loans to BOA under cover of a Bailee Letter.  After BOA sent Colonial the purchase amount for its Participated Mortgage Loans from Ocala's bank accounts at BOA, Ocala would be the owner of the Participated Mortgage Loans and these Participated Mortgage Loans would be collateral for Deutsche Bank and BNP's

loans under the Ocala commercial paper facility.  Soon thereafter, BOA would
transmit the Participated Mortgage Loans to Freddie Mac or another takeout
purchaser.  After Freddie Mac or another takeout investor purchased the Loans, the
funds would be sent back to Ocala's bank accounts at BOA and would serve either as
collateral for Deutsche Bank or BNP Paribas or as capital with which Ocala could
purchase more loans from Colonial.

41.     BOA was thus instrumental regarding the flow of the Participated Mortgage Loans
and funds for Ocala, but BOA did not fulfill its duties because of the dual capacity in
which it acted.  BOA served two masters (Colonial on the one hand, and Deutsche
Bank/BNP Paribas on the other hand) each and every time it accepted a Participated
Mortgage Loan from Colonial.  As long as the interests of these two masters were not
in conflict in regard to the Participated Mortgage Loans, BOA was paid twice for
doing the same work—holding the Participated Mortgage Loans for the benefit of
others.

42.     From July 2008 to December 2008, when Colonial transferred the Participated
Mortgage Loans to BOA pursuant to the Custodial Agreement and Bailee Letters,
Ocala generally functioned as it was intended and BOA ensured that Colonial
received payment for its Participated Mortgage Loans before pledging them as
collateral for Deutsche Bank/BNP Paribas and selling them to Freddie Mac.

43.     However, in certain instances commencing approximately in December 2008, the
payments made to Colonial referenced in the previous paragraph were not always
made before the Participated Mortgage Loans were treated as collateral for Deutsche
Bank/BNP Paribas and sold to Freddie Mac — as was required under the Custodial
Agreement and Bailee Letters.  Instead, in these instances, BOA would receive the
Participated Mortgage Loans from Colonial, and upon instructions from TBW, BOA

would pledge them as collateral for Deutsche Bank/BNP Paribas and sell them to Freddie Mac, all without payment to Colonial.

44.     In transmitting the Participated Mortgage Loans to Freddie Mac in these instances, and despite lacking any ownership interest in those Participated Mortgage Loans, BOA would sign a document stating that it had the right to sell them and that Colonial's ownership interest did not exist.  Specifically, BOA signed a false Freddie Mac Form 996E entitled "Warehouse Lender Release of Security Interest" stating that it was the "Warehouse Lender," that TBW was the "Seller" for the Participated Mortgage Loans owned by Colonial, and that there were no other encumbrances on the Participated Mortgage Loans (the "Form 996Es").  Freddie Mac required that Form 996Es be executed for each Participated Mortgage Loan that it purchased.  After Freddie Mac purchased the Participated Mortgage Loans, then, upon information and belief, BOA would send funds to Colonial to pay off the Participated Mortgage Loans.

45.     Thus, although Colonial eventually received payment from BOA for its ownership of the Participated Mortgage Loans (other than the 4,808) in these instances, it was not paid pursuant to the Custodial Agreement or Bailee Letters.  Instead, it was paid *after* BOA had effectively stripped Colonial's ownership of the Participated Mortgage Loans by pledging them as collateral for Deutsche Bank/BNP Paribas, signing and submitting demonstrably false Form 996Es to Freddie Mac professing that the Participated Mortgage Loans were not encumbered by any other interests, and then selling the Participated Mortgage Loans to Freddie Mac.

46.     BOA's impermissible actions were unknown to Colonial because it still typically received payment for the Participated Mortgage Loans within the appropriate period of time under the Bailee Letters.  However, BOA's conduct was revealed when

Colonial Bank closed on August 14, 2009 and 4,808 Participated Mortgage Loans had
been purchased by Freddie Mac, for which Colonial was never paid.

47.     Therefore, as a proximate result of BOA's actions, at any point in time from
December 2008 to August 2009, Colonial, Deutsche Bank/BNP Paribas and Freddie
Mac may have believed that they held an ownership interest in the same loans.

48.     In fact, this "triple-pledging" came to light when Colonial closed on August 14, 2009.
At that time, (1) Colonial, Deutsche Bank/BNP Paribas and Freddie Mac each
believed they had an ownership in interest in the same 4,205 Participated Mortgage
Loans, and (2) Colonial and Freddie Mac believed that they had ownership of an
additional 603 Participated Mortgage Loans.  These 4,808 Participated Mortgage
Loans are the subject matter of this complaint.

49.     In other words, in August 2009, BOA had obligations to Colonial on one side for the
4,808 Participated Mortgage Loans for which it never provided payment, and on the
other side to Deutsche Bank and BNP Paribas for the collateral it was supposed to be
protecting.

50.     BOA then chose, for reasons unknown, to further affirmatively breach its obligations
to Colonial by racing to the courthouse and filing a complaint against Colonial before
it collapsed and was placed into Receivership. The complaint, filed in the United
States District Court for the Southern District of Florida also sought a temporary
restraining order.  *See Bank of America, N.A. v. Colonial Bank and John Doe # 1-10*,
09-cv-22384.  The complaint made allegations regarding Ocala's ownership of loans
that were revealed to be demonstrably false.

51.     The District Court granted the temporary restraining order a day after it was filed, but
before the FDIC was appointed receiver for Colonial.

52.   After the FDIC was appointed receiver, BOA moved for, and the court granted, a preliminary injunction against the FDIC.

53.   The United States Court of Appeals for the Eleventh Circuit properly vacated the preliminary injunction against the FDIC, and BOA subsequently voluntarily dismissed the case on October 13, 2010.

54.   Having voluntarily dismissed its case once, BOA refiled a complaint against the FDIC-R in the United States District Court for the District of Columbia on October 1, 2010.

55.   FDIC-R moved to dismiss the Complaint, on several bases, on March 14, 2011. In response, BOA filed the operative First Amended Complaint ("FAC") as a matter of course on April 4, 2011.

56.   In its First Amended Complaint, BOA identifies itself as the trustee for Ocala. FAC, ¶ 11.

57.   In its First Amended Complaint, BOA identifies itself as "indenture trustee, collateral agent and custodian and in other capacities with respect to the short term notes and the subordinated notes issued by Ocala Funding, LLC." FAC, Introduction.

58.   In its First Amended Complaint, BOA identifies itself as "indenture trustee, collateral agent, custodian, and duly appointed attorney-in-fact for Ocala Funding." FAC, ¶ 10.

59.   In its First Amended Complaint, BOA alleges that Ocala granted to BOA a security interest in "accounts, loans, cash, and proceeds" to "secure and to provide for the full and timely repayment . . . and performance of all liabilities and obligations owed or owing by [Ocala Funding] . . . ."  FAC, ¶ 8.

60.   In its First Amended Complaint, BOA alleges that it has a perfected security interest in the "Assigned Collateral" "by virtue of [its] possession and/or control." FAC, ¶ 8.

61.     Nowhere in its First Amended Complaint does BOA discuss or even acknowledge its duties to Colonial as its agent, custodian, bailee, and fiduciary.  If the foregoing allegations of BOA's First Amended Complaint are true, each and every one of them represents a breach of BOA's obligations to Colonial.

62.     If BOA's race to the courthouse was designed to pacify BOA's other masters, Deutsche Bank and BNP Paribas, the tactic failed, for Deutsche Bank and BNP Paribas have each sued BOA in the Southern District of New York for $1.25 billion and for $480.7 million, respectively, alleging similar breaches of fiduciary duty and contract as those set forth in detail below.[3]

63.     On August 14, 2009, the Alabama State Banking Department appointed the Federal Deposit Insurance Corporation as Receiver for Colonial Bank.

64.     As Colonial's Receiver, FDIC-R succeeded to all rights, titles, powers, and privileges of Colonial, including all causes of action.

65.     BOA has not remitted to Colonial the Takeout Amount for these 4,808 Participated Mortgage Loans, which were purchased by Freddie Mac.

66.     BOA's actionable failures to Colonial are many, representing breaches of contract, breaches of bailment, and self-enrichment at Colonial's expense, all detailed in the counterclaims set forth below.

**Count 1 – Breach of Contract**

67.     FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

68.     The Custodial Agreement, ¶ 4(B), obligates BOA, in its capacity as agent and bailee, to hold the documents associated with each Participated Mortgage Loan for the

---

[3] *See Deutsche Bank, AG v. Bank of America, N.A.*, Civil Action No. 09-CV-9784 (RWS), U.S. District Court for the Southern District of New York; *BNP Paribas Mortgage Corporation v. Bank of America, N.A.*, Civil Action No. 09-CV-9783 (RWS), U.S. District Court for the Southern District of New York.

exclusive use and benefit of Colonial and for the purposes of perfecting Colonial's ownership interests in the Participated Mortgage Loans.

69.     Upon information and belief, BOA failed to hold the 4,808 Participated Mortgage Loans for the exclusive use and benefit of Colonial and engaged in acts which have been inconsistent with the purposes of perfecting Colonial's ownership interests in these Participated Mortgage loans.

70.     By failing to meet this obligation, BOA breached the Custodial Agreement.

71.     BOA's breach proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 2 – Breach of Contract

72.     FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

73.     The Custodial Agreement, ¶ 4(B), obligates BOA to segregate and maintain continuous custody of all mortgage documents associated with the Participated Mortgage Loans.

74.     Upon information and belief, BOA failed to segregate and maintain continuous custody of all mortgage documents associated with the Participated Mortgage Loans.

75.     By failing to meet this obligation, BOA breached the Custodial Agreement.

76.      BOA's breach proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 3 – Breach of Contract

77.     FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

78.     The Custodial Agreement, ¶ 4(D), obligates BOA to exercise reasonable care in the custody and preservation of the items it receives as Custodian.

79.     BOA failed to exercise reasonable care in the custody and preservation of the

        Participated Mortgage Loans and associated documents, which it received as

        Custodian.

80.     By failing to meet this obligation, BOA breached the Custodial Agreement.

81.     BOA's breach proximately caused FDIC-R damages in an amount to be determined

        through discovery and trial.

### Count 4 – Breach of Contract

82.     FDIC-R restates and realleges the allegations contained in the paragraphs above as if

        fully set forth herein.

83.     The Custodial Agreement, ¶ 7(A), obligates BOA to return to Colonial all items and

        documents associated with any Participated Mortgage Loan which are not purchased

        by Ocala within six business days of BOA's receipt of those items and documents.

84.     Upon information and belief, BOA failed to return to Colonial the Participated

        Mortgage Loans and their associated documents unpurchased by Ocala within six

        business days of BOA's receipt of those items.

85.     By failing to meet this obligation, BOA breached the Custodial Agreement.

86.     BOA's breach proximately caused FDIC-R damages in an amount to be determined

        through discovery and trial.

### Count 5 – Breach of Contract

87.     FDIC-R restates and realleges the allegations contained in the paragraphs above as if

        fully set forth herein.

88.     By executing the Custodial Agreement, BOA represented and warranted that it did not

        at the time of execution, and during the existence of the Custodial Agreement would

        not hold, any interest adverse to Colonial, by way of security or otherwise, in any

Participated Mortgage Loan and further waived and released any such interest it may have in any Participated Mortgage Loan. Custodial Agreement, ¶ 17(K).

89.     BOA sued Colonial and its successor FDIC-R, alleging that it possesses a security interest in, upon information and belief, Participated Mortgage Loans adverse to Colonial's interests.

90.     BOA sued Colonial and its successor FDIC-R, alleging that it is the rightful owner of, upon information and belief, Participated Mortgage Loans, adverse to Colonial interests.

91.     In so doing, BOA breached its contractual warranty to Colonial and breached the Custodial Agreement.

92.     BOA's breach proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 6—Breach of Bailment

93.     FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

94.     Pursuant to the Custodial Agreement and the standard Bailee Letters, BOA agreed by express contract to function as Colonial's bailee.

95.     The Participated Mortgage Loans and their associated documents constitute the personalty subject to bailment.

96.     The Custodial Agreement and the standard Bailee Letters constituted Colonial's instructions to BOA as bailee of the Participated Mortgage Loans and their associated documents.

97.     Pursuant to Colonial's instructions, BOA was bound to hold in trust for Colonial's benefit the Participated Mortgage Loans and all associated documents transferred pursuant to the Custodial Agreement and Bailee Letters.

98.     After accepting the Participated Mortgage Loans and associated documents, upon information and belief, BOA failed to hold them in trust for the sole benefit of Colonial and instead released and delivered them to others, encumbered them with BOA's claims and those of other entities, and generally failed to act with the care required of a trustee.

99.     In so doing, BOA breached the terms of the bailment.

100.    BOA's breach of the bailment has proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 7 – Breach of Bailment

101.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

102.    Pursuant to Colonial's instructions in the Bailee Letters, BOA was obligated not to release or deliver or authorize the release or delivery of any of the Participated Mortgage Loans or associated documents to any person if doing so would jeopardize Colonial's ownership in the Participated Mortgage Loans and their associated documents.

103.    After accepting the Participated Mortgage Loans and associated documents, upon information and belief, BOA released and delivered them to others, encumbered them with BOA's claims and those of other entities, executing the Form 996Es, and by engaging in these and other acts, jeopardized Colonial's ownership in the Participated Mortgage Loans and associated documents.

104.    In so doing, BOA breached the terms of the bailment.

105.    BOA's breach of the bailment proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

**Count 8 – Breach of Bailment**

106.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

107.     Pursuant to Colonial's instruction in the Bailee Letters, BOA was obligated to either remit the Takeout Amount of the Participated Mortgage Loans to Colonial or to return the Participated Mortgage Loans and associated documents to Colonial with its ownership still intact, and to do so within 45 days of the initiation of the bailment.

108.    More than 45 days have elapsed since the bailment of each of the at least 4,808 Participated Mortgage Loans, and BOA has failed to return the Participated Mortgage Loans and their associated documents with Colonial's ownership still intact and has failed to remit to FDIC-R the approximately $898,873,958 constituting the Takeout Amount for these Participated Mortgage Loans.

109.    In so doing, BOA breached the terms of the bailment.

110.    BOA's breach of the bailment proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

**Count 9 – Breach of Bailment**

111.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

112.    Pursuant to Colonial's instruction, BOA was obligated to deliver the Takeout Amount or the Participated Mortgage Loans and associated documents only to Colonial and pursuant to the terms of the Bailee Letters.

113.    BOA has failed to deliver the Takeout Amount to Colonial or its successor, FDIC-R, pursuant to the terms of the Bailee Letters.

114.   Upon information and belief, BOA delivered the Participated Mortgage Loans either to others than Colonial or FDIC-R or has delivered them to Colonial on terms inconsistent with the terms of the Bailee Letters.

115.   In so doing, BOA breached the terms of the bailment.

116.   BOA's breach of the bailment proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

**Count 10 – Breach of Bailment**

117.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

118.   Pursuant to Colonial's instruction in the Bailee Letters, BOA was obligated to subordinate any interest BOA had in the Participated Mortgage Loans and/or the associated documents to the interests and ownership of Colonial.

119.   Upon information and belief and based in part on the allegations of BOA's First Amended Complaint, BOA has asserted alleged interests of its own which BOA claims to be superior to, rather than subordinate to, Colonial's interest in the Participated Mortgage Loans.

120.   In so doing, BOA breached the terms of the bailment.

121.   BOA's breach of the bailment proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

**Count 11 – Breach of Bailment**

122.   FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

123.   Pursuant to Colonial's instruction in the Bailee Letters, BOA was obligated not to exercise any right with respect to the Participated Mortgage Loans without the prior written consent of Colonial.

124.   Upon information and belief and based in part on the allegations of BOA's First Amended Complaint, BOA exercised alleged rights with respect to the Participated Mortgage Loans.

125.   Upon information and belief, Colonial did not provide written authorization to BOA to exercise the rights it claims it possesses and alleges it has exercised.

126.   FDIC-R has not provided written authorization to BOA to exercise the rights it claims it possesses and has exercised.

127.   Accordingly, BOA breached the terms of the bailment.

128.   BOA's breach of the bailment proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 12 – Breach of Bailment

129.   FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

130.   Pursuant to Colonial's instruction in the Bailee Letters, BOA was obligated not to honor any requests or instructions from TBW relating to any of the Participated Mortgage Loans.

131.   BOA honored requests and instructions from TBW relating to the Participated Mortgage Loans.

132.   Accordingly, BOA breached the terms of the bailment.

133.   BOA's breach of the bailment proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 13 – Negligence

134.   FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

135.    BOA, through the Bailee Letters, explicitly agreed to act as Colonial's agent, on its behalf and subject to its control, in regard to the Participated Mortgage Loans and their associated documents.

136.    As Colonial's agent, BOA owed to Colonial a duty of care in regard to the subject matter of the agency.

137.    By, among other things, engaging the conduct set forth in Paragraphs 23-28, 31-33, 36-39, 43-45, 49 and 65 of the Counterclaims above, BOA breached its duty of care to Colonial.

138.    BOA's breach of its duty of care proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 14 – Breach of Fiduciary Duty of Care

139.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

140.    BOA, through the Bailee Letters, explicitly agreed to act as Colonial's agent, on its behalf and subject to its control, in regard to the Participated Mortgage Loans and their associated documents.

141.    As Colonial's agent, BOA owed to Colonial a fiduciary duty of care in regard to the subject matter of the agency.

142.    By, among other things, engaging the conduct set forth in Paragraphs 23-28, 31-33, 36-39, 43-45, 49 and 65 of the Counterclaims above, BOA breached its fiduciary duty of care to Colonial.

143.    BOA's breach of its fiduciary duty of care proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 15 – Breach of Fiduciary Duty of Loyalty

144.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

145.    BOA, through the Bailee Letters, explicitly agreed to act as Colonial's agent, on its behalf and subject to its control, in regard to the Participated Mortgage Loans and their associated documents.

146.    As Colonial's agent, BOA owed to Colonial a fiduciary duty of loyalty in regard to the subject matter of the agency.

147.    By, among other things, engaging the conduct set forth in Paragraphs 23-28, 31-33, 36-39, 43-45, 49 and 65 of the Counterclaims above, BOA breached its fiduciary duty of loyalty to Colonial.

148.    BOA's breach of its fiduciary duty of loyalty proximately caused FDIC-R damages in an amount to be determined through discovery and trial.

### Count 16 – Breach of Bailment (Common Law)

149.    FDIC-R restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

150.    Colonial delivered the Participated Mortgage Loans to BOA, as bailee, in good condition.

151.    When Colonial delivered the Participated Mortgage Loans to BOA, as bailee, there were no liens or encumbrances on the Participated Mortgage Loans.

152.    While the Participated Mortgage Loans were in the care, custody, and control of BOA, they were damaged by, *inter alia*, BOA encumbering the Participated Mortgage Loans, signing the Form 996Es and selling the Participated Mortgage Loans to Freddie Mac.

153.    BOA did not exercise ordinary care while holding the Participated Mortgage Loans as

bailee.

154.    BOA's failure to exercise ordinary care while in the possession of the Participated

Mortgage Loans caused FDIC-R damages in an amount to be determined through

discovery and trial.

WHEREFORE, FDIC-R demands the following relief:

   A.  An award of damages sufficient to compensate FDIC-R for the losses

       sustained by Colonial;

   B.  An award of the costs and fees associated with the defense of BOA's suit and

       the prosecution of FDIC-R's counterclaims; and

   C.  Such other relief as the Court may deem proper.


**JURY TRIAL DEMAND**

The FDIC-R hereby demands a jury trial on all issues and claims triable to a jury in

this matter.

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for
Colonial Bank and as Receiver for
Platinum Community Bank

*/s/ Benjamin L. Bailey*
Athanasios Basdekis (DC Bar  #463692)
Benjamin L. Bailey (Admitted Pro Hac Vice)
Christopher S. Morris (Admitted Pro Hac Vice)
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555 (telephone)
(304) 342-1110 (facsimile)

Kathryn R. Norcross
Senior Counsel
Susan Kantor Bank
Counsel
Jeffrey E. Schmitt
Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, VS-D-7126
Arlington, VA  22226
(703) 562-2389
Attorneys for FDIC-Receiver

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BANK OF AMERICA, NATIONAL ASSOCIATION, as indenture trustee, Custodian, and collateral agent for Ocala Funding, LLC,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for Colonial Bank and in its capacity as Receiver for Platinum Community Bank,**<br><br>    **Defendant.** | **Case 1:10-cv-01681**<br>**Judge James E. Boasberg** |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 5th day of August 2011, a copy of the foregoing **ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** was served via the electronic CM/ECF system on all counsel of record as set forth below:

    Bonnie K. Arthur
    HUNTON &WILLIAMS LLP
    1900 K Street, N.W.
    Washington, DC 20006
    barthur@hunton.com

    Frank E. Emory, Jr.
    Patrick L. Robson
    HUNTON &WILLIAMS LLP
    Bank of America Plaza, Suite 3500
    101 South Tryon Street
    Charlotte, North Carolina 28280
    femory@hunton.com
    probson@hunton.com

Michael B. Kruse
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, NY  10166-0005
mkruse@hunton.com

Joseph J. Saltarelli
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, NY  10166-0005
jsaltarelli@hunton.com

*/s/ Benjamin L. Bailey*
Benjamin L. Bailey (Admitted Pro Hac Vice)