Case 1:10-cv-01681-BJR   Document 105   Filed 08/26/13   Page 1 of 14

Case 1:10-cv-01681-BJR Document 105 Filed 08/26/13 Page 1 of 14

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BANK OF AMERICA, N. A., As Indenture Trustee, Custodian, and Collateral Agent for OCALA FUNDING, LLC,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as the Receiver for COLONIAL BANK, and in its capacity as the Receiver for PLATINUM COMMUNITY BANK,<br><br>    Defendant and Counterclaim Plaintiff. | Civil Action No. 10-CV-1681 (BJR)<br><br>ORDER GRANTING FDIC'S MOTION TO DISMISS BOA'S CLAIMS AGAINST THE FDIC AS RECEIVER FOR COLONIAL BANK |

## I.    INTRODUCTION

Plaintiff and Counterclaim Defendant Bank of America, N.A. ("BOA"), acting as the indenture trustee, collateral agent, custodian, and "in other capacities" with respect to short term and subordinated notes issued by Ocala Funding, LLC (the "Ocala Notes"), filed claims against the Colonial Bank ("Colonial") receivership on behalf of itself and two investors in the Ocala Notes. Dkt. No. 20 (First Amended Complaint ("FAC") at Introduction and ¶ 4). Defendant and Counterclaimant Federal Deposit Insurance Corporation ("FDIC"), in its capacity as the Receiver for Colonial, moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 73 ("Mot."). The FDIC argues that in light of its recent formal determination that the assets of the Colonial receivership are insufficient to make any distribution on the claims of general unsecured creditors (the "No-Value Determination"),

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BANK OF AMERICA, N. A.,
As Indenture Trustee, Custodian, and
Collateral Agent for OCALA FUNDING, LLC,

    Plaintiff and Counterclaim Defendant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as the Receiver for COLONIAL BANK, and in its capacity as the Receiver for PLATINUM COMMUNITY BANK,

    Defendant and Counterclaim Plaintiff.

Civil Action No. 10-CV-1681 (BJR)

ORDER GRANTING FDIC'S MOTION TO DISMISS BOA'S CLAIMS AGAINST THE FDIC AS RECEIVER FOR COLONIAL BANK

## I.    INTRODUCTION

Plaintiff and Counterclaim Defendant Bank of America, N.A. ("BOA"), acting as the indenture trustee, collateral agent, custodian, and "in other capacities" with respect to short term and subordinated notes issued by Ocala Funding, LLC (the "Ocala Notes"), filed claims against the Colonial Bank ("Colonial") receivership on behalf of itself and two investors in the Ocala Notes. Dkt. No. 20 (First Amended Complaint ("FAC") at Introduction and ¶ 4). Defendant and Counterclaimant Federal Deposit Insurance Corporation ("FDIC"), in its capacity as the Receiver for Colonial, moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 73 ("Mot."). The FDIC argues that in light of its recent formal determination that the assets of the Colonial receivership are insufficient to make any distribution on the claims of general unsecured creditors (the "No-Value Determination"),

1

BOA's claims have "no value" and must therefore be dismissed because no case or controversy exists under Article III of the United States Constitution. Mot. at 2. Alternatively, the FDIC moves to dismiss BOA's claims as prudentially moot. *Id*.

BOA opposes the motion, arguing that it should be denied on "five separate and independent grounds." Dkt. No. 90 ("Opp.") at 2. First, BOA argues that the No-Value Determination only implicates general unsecured claims, and not the other "priority claims" that BOA filed against the Colonial receivership. Second, BOA argues that the No-Value Determination is fundamentally flawed and should not be accepted at face value. Third, BOA claims that even if its claims are moot, they can still be used as a setoff against the FDIC's counterclaims. Fourth, BOA contends that the FDIC has identified no "conventional legal basis for the Court to give dispositive weight to the 'no-value' determination.'" Lastly, BOA argues that—even if this Court rules against BOA on the four above grounds—it should refrain from dismissing BOA's claims until BOA has had an opportunity to challenge the No-Value Determination through the Administrative Procedures Act ("APA") process.

Having reviewed the briefing by the parties, together with all other relevant materials, the Court finds that the FDIC's No-Value Determination is a final agency action, and is therefore subject to challenge only pursuant to the APA. The No-Value Determination is binding on this Court and is preclusive as to whether there are now or ever will be assets sufficient to satisfy general unsecured claims against the Colonial receivership. The Court further finds that BOA has only asserted general unsecured claims. Because the Colonial receivership will never have the assets necessary to satisfy a judgment in BOA's favor, this Court lacks subject matter jurisdiction over BOA's claims. What is more, the claims against the receivership are

prudentially moot. Thus, the Court will GRANT the FDIC's motion to dismiss BOA's affirmative claims. The Court's reasoning is set forth below.

## II.   FACTUAL BACKGROUND

This Court has described the financial transactions underpinning this case in great detail on multiple occasions. *See*, *e.g*., Dkt. No. 50. It will refrain from doing so again here. Instead, the Court will briefly outline the background of this dispute, and elaborate, as necessary, in the discussion below.

On August 3, 2009, federal agents raided the Florida offices of Taylor, Bean & Whitaker Mortgage Corp. ("TBW") and Colonial. Eventually, agents uncovered a multi-billion dollar fraudulent scheme that resulted in a tremendous financial loss to a number of financial entities. The discovery has spawned multiple lawsuits between these entities. In this lawsuit, BOA, acting in its capacity as the indenture trustee, custodian, and collateral agent for the Ocala Notes (Ocala was one of TBW's subsidiaries) as well as two investors in Ocala Notes, seeks to recover approximately $1.7 billion from the FDIC as the receiver for the now defunct Colonial and Platinum Community Bank ("Platinum"), another bank involved in the TBW scheme.[1] The FDIC, in turn, countersued, seeking to recover $900 million from BOA for allegedly breaching its duties as the custodian and bailee for Colonial.

On December 10, 2012, this Court issued a Memorandum Decision dismissing all of BOA's claims on behalf of Ocala, but did not dismiss certain claims to the extent that they were brought by BOA on behalf of the two investors and in BOA's individual capacity. Dkt. No. 50. Discovery commenced on the remaining issues.

---

[1]   This case also involves claims against the Platinum Bank receivership, but the FDIC does not seek to dismiss those claims.

On April 15, 2013, the FDIC issued the No-Value Determination regarding Colonial. *See* 78 Fed. Reg. 76, 23565 (April 15, 2013). The No-Value Determination announced that "insufficient assets exist in the receivership of Colonial [], to make any distribution on general unsecured claims, and therefore such claims will recover nothing and have no value." *Id*. It states that as of March 31, 2013, "the maximum value of assets that could be available for distribution by the Receiver, together with maximum possible recoveries on professional liability claims against directors, officers, and other professionals, as well as potential tax refunds, was $3,282,813,040." *Id*. The No-Value Determination further states that as of that same date, the "administrative expenses and depositor liabilities equal $4,981,236,544, exceeding available assets and potential recoveries by $1,698,423,504." *Id*.

### III.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction. *Harris v. Sebelius*, ___ F. Supp. 2d ___, 2013 WL 1209945, *1 (D.D.C. 2013). When a party files a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Id*. (quoting *Carney Hosp. Transitional Care Unit v. Leavitt*, 549 F. Supp. 2d 93, 95 (D.D.C. 2008)) (other citation and internal quotation marks omitted) (alterations in original). A court considering a motion to dismiss for lack of jurisdiction must accept the factual allegations in the complaint as true. *Id*. (citing *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). However, a court need not accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing a motion to dismiss under Rule 12(b)(1), a court may consider any undisputed facts in the record, or "the complaint supplemented by undisputed facts plus the court's resolution of disputed

4

facts." *Harris*, 2013 WL 1209945, *1 (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, or in this case, an amended complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To satisfy this test, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft*, 556 U.S. at 678.

## IV.   DISCUSSION

### A.   The No-Value Determination

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") was enacted in 1989 in the wake of the savings and loan crisis "to enable the FDIC ... to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country." *MBIA Ins. Corp. v. FDIC*, 708 F.3d 234, 236 (D.C. Cir. 2013) (quoting *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995)). Congress authorized the takeover of failing federally regulated financial institutions, vesting authority in the FDIC as receiver to liquidate the remaining assets of the failed institution, *see* 12 U.S.C. § 1821(d)(2)(E), and as conservator to "carry on the business of the institution and preserve and conserve the assets and property,"

*see id*. § 1821(d)(2)(D)(ii). Upon appointment, the FDIC steps into the shoes of the failed institution and succeeds in "title to the books, records, and assets" of that entity, as well as to "all rights, titles, powers, and privileges" of the institution. *MBIA,* 708 F.3d at 236 (quoting § 1821(d)(2)(A)). In so doing it has "extraordinary powers." *Id*. (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B*., 28 F.3d 376, 388 (3d Cir. 1994)).

In addition, in 1993 Congress adopted the National Depositor Preference Amendment to the Federal Deposit Insurance Act. *Id*. (citing Pub.L. 103–66, § 3001(a), 107 Stat. 312, 336–37). As codified at 12 U.S.C. § 1821(d)(11)(A), it sets forth the order of priority for payment of proven claims in the receivership estate. *Id*. The FDIC's administrative expenses are paid first, followed by deposit liabilities, and then general creditor claims. *Id*. Payments on claims in each priority class are made *pro rata*, but no payments may be made to a lower-priority class unless all claims in the higher-priority class have been satisfied. *Id*. Thus, Congress has prohibited the FDIC from making any distribution to general unsecured creditors unless there are sufficient assets to pay deposit liabilities in full. *Id*.

Furthermore, Congress requires the FDIC to "preserve and conserve" the assets and property of a failed institution. 12 U.S.C. § 1821(d)(2(B)(iv). With this mandate in mind, the FDIC may issue a "no-value" determination if it determines that there are not and never will be sufficient assets to pay any dividend, distribution, or payment to claims of general creditors. The FDIC asserts that such a determination "enables [it] to stop processing claims and to seek dismissal of pending court actions on prudential mootness grounds to save the administrative expense of processing and defending such claims. Dkt. No. 94 ("Reply") at 8.

B. **The FDIC's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Prudential Mootness**

As discussed above, the FDIC seeks dismissal of BOA's claims against it as the Receiver for Colonial based on the FDIC's No-Value Determination. It argues that the claims should be dismissed for lack of subject matter jurisdiction because there is no case or controversy. According to the FDIC, its No-Value Determination conclusively establishes that there are no assets in the Colonial receivership estate to make any payments on general unsecured creditor claims, including BOA's, and that such claims therefore have no value. Mot. at 5. The FDIC argues that this Court's jurisdiction extends only to actual cases or controversies, and a case or controversy does not exist where no effective relief may be granted. *Id*. at 7 (citing *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983) (noting that a case becomes moot and must be dismissed for lack of subject-matter jurisdiction when a court is no longer able to grant meaningful relief)). Alternatively, the FDIC argues that BOA's claims are prudentially moot because proceeding on the merits would serve no practical purpose, and would only waste judicial resources. *Id*. at 8 (citing *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986) (a court may dismiss claims for prudential mootness, even if the court has subject matter jurisdiction, where common sense or equitable considerations justify dismissal)).

BOA argues that the FDIC's motion must be denied for the "five separate and independent reasons" outlined in the introduction of this Order. Opp. at 2. The Court will address each reason in turn.

1. **Whether BOA Has Asserted Claims Other Than General Unsecured Claims Against the Colonial Receivership**

As its lead argument, BOA contends that the No-Value Determination only bars recovery on general unsecured claims. This is significant, BOA argues, because its claims are not limited

7

to general unsecured claims; rather, it has expressly asserted "trust or preferred claims," "secured claims," "deposit liability," and "guaranty and insurance claims." Opp. at 10. As evidence of this, BOA directs this Court's attention to paragraphs 4 and 124 in the First Amended Complaint, in which BOA alleges that it "timely filed a proof of claim in the Colonial receivership, which sought, *inter alia*, allowance of a general unsecured claim against Colonial." *Id*. (citing FAC at ¶¶ 4, 124). BOA argues that "nothing in the [Amended] Complaint purports to limit BOA's recovery to the part of its proof of claim that had been styled as a general unsecured claim…[i]ndeed, the term "*inter alia*" in [the Amended] complaint was a clear reference to the other types of claims—*i.e.*, the priority claims—that BOA had made." *Id*.

The FDIC counters that this is the first time that BOA has argued that it is suing for recovery on claims other than general unsecured claims. Reply at 3. According to the FDIC, the First Amended Complaint "is completely devoid of any mention of these claims" and this Court should reject BOA's attempt to now assert such claims because "it violates one of the purposes of a complaint"—to describe the factual and legal basis of a lawsuit in order to focus the issues and help respondents prepare their defense. *Id*. at 4.

The Court agrees with the FDIC. It cannot reasonably be disputed that the First Amended Complaint limits BOA claims against the Colonial receivership to general unsecured claims. *See*, *e.g*., FAC at ¶ 124 ("In its Colonial proof of claim, [BOA] sought allowance of *a general unsecured claim* against Colonial insofar as it was complicit in the fraud that resulted in losses to Ocala Funding and holders of beneficial interests in it.") (emphasis added); FAC at ¶ 4 (noting that "[BOA] timely filed a proof of claim in the Colonial receivership, which sought, *inter alia*, allowance of *a general unsecured claim* against Colonial insofar as it was complicit in the fraud that resulted in losses to Ocala funding.") (emphasis added).

BOA's argument that this Court should infer that BOA also brought priority claims against the Colonial receivership because "nothing in the [Amended] Complaint purports to limit BOA's recovery to" general unsecured claims is borderline frivolous. Using the phrase "*inter alia*" in paragraph 4 of the First Amended Complaint does not rescue BOA's alleged priority claims. If simply throwing the phrase "*inter alia*" into a complaint meant that a plaintiff could later assert any claim he so chose, the pleading requirements of Federal Rule of Civil Procedure 8 would be meaningless. Fed. R. Civ. Pro. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Likewise, arguing that a claim is asserted if it is not expressly excluded from a complaint goes against the clear mandate of Rule 8. Accordingly, this Court concludes that BOA has only filed general unsecured claims against the Colonial receivership.[2]

### 2.   BOA Cannot Collaterally Attack the No-Value Determination

Next, BOA alleges that the No-Value Determination is fundamentally flawed and should not be accepted at face value. Specifically, BOA urges this Court to deny the FDIC's motion to dismiss because, according to BOA, the No-Value Determination "fails to state the total potential value of the [Colonial receivership's] assets, including potential litigation recoveries" and it is "unclear whether [the] claims administrative expenses—which form part of the FDIC's 'liabilities' figure—are contested or otherwise debatable." Opp. at 11-12. Therefore, BOA argues, "[i]t is impossible in this case, on this record, to conclude that the Colonial receivership's assets are irrefutably insufficient to satisfy general unsecured claims." *Id*. at 13.

---

[2]   The Court notes that 4 paragraphs of the First Amended Complaint's 234 paragraphs reference BOA's alleged security interest in "the collateral at issue." However, as the FDIC points out, there is no collateral at issue in this case because the ownership of any disputed loans was resolved by the TBW Loan Allocation Order and the disputed loans and proceeds distributed to their rightful owners. *See* Dkt. No. 94, Ex. A.

In other words, BOA seeks to challenge the FDIC's No-Value Determination through this lawsuit. However, such collateral attacks are not permitted. The No-Value Determination is a final agency action that is binding on this Court and is preclusive as to whether there are now or ever will be assets sufficient to satisfy general unsecured claims against the Colonial receivership. *South Miami Holdings, LLC v. FDIC*, Case No. 12-15992, __ Fed. Appx. __, 2013 WL 4046717, *4 (11th Cir. August 12, 2013) (per curiam) (citing *Santopadre v. Pelican Homestead & Sav. Assoc.*, 937 F.2d 268, 272 (5th Cir. 1991); *see also*, *Adams v. Resolution Trust Corp.*, 927 F.2d 348, 354 (8th Cir. 1991) (the "court is bound by the Bank Board's worthlessness determination"); *Ward v. Intercontinental Morg. Group, LLC*, 2012 WL 10334, *2 (S.D. Ohio, Jan. 3, 2012) (FDIC's finding of worthlessness is "binding on this Court and is preclusive as to whether there are now or ever will be assets sufficient to satisfy the claims").

As a final agency action, the No-Value Determination is subject to challenge only pursuant to the APA, and is not subject to collateral attack through individual lawsuits against the FDIC. *South Miami Holdings,* 2013 WL 4046717, *4, n. 2; *see also*, *Adams*, 927 at 355, n. 15 ("A…determination of worthlessness is a final agency action, which is reviewable under the provisions of the [APA] in an action against the [FDIC], but not subject to collateral attack through discovery or other means in individual lawsuits against the receiver.") (internal quotation marks and citation omitted); *281-300 Joint Venture v. Onion*, 938 F.2d 35, 38 (5th Cir. 1991) (holding that collateral attacks on a final agency determination of worthlessness is improper); *Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Co.*, 854 F. Supp. 2d 756, 760 n. 2 (C.D. Cal. June 28, 2011) ("Because the FDIC's no-value determination is binding, Deutsche Bank cannot challenge it to avoid prudential mootness."); *Kosnitsky v. FDIC*, 2012 WL 4127327, at *2 (S.D. Fla. July 26, 2012) (plaintiff not entitled to discovery or to collaterally

attack FDIC's no value determination in its lawsuit against the receiver); *Haggard v. Ossege*, 2011 WL 4711926, *2 (S.D. Ohio Oct. 4, 2011) (same); *Federal Sav. & Loan Ins. Corp. v. Locke*, 718 F. Supp. 573, 586 (W.D. Tex. 1989) (same). The APA is the appropriate avenue for challenging the FDIC's No-Value Determination. This Court will not, and indeed cannot, allow BOA to circumvent Congress' explicit procedures for judicial review.

### 3. BOA Is Not Permitted to Set off Its Claims Against the FDIC

Next, BOA argues that notwithstanding the No-Value Determination, its claims against the FDIC constitute a justiciable case or controversy because BOA can set off any recovery on those claims against any monies it owes to the FDIC. The FDIC disagrees. It counters that Congress has unequivocally limited the FDIC's maximum liability to any creditor-claimant of a failed institution in receivership to the amount that the claimant would have received if the FDIC had liquidated the assets and liabilities of the failed institution. In this case, the FDIC argues, BOA, as a general unsecured creditor, will receive nothing on its claims. Therefore, allowing BOA to set off the value of its unsecured claims against any recovery that the FDIC might make against it would run afoul of Congress's clear mandate that the FDIC's liability is limited to the amount that a claimant would receive under the distribution scheme set forth in FIRREA.

The FDIC's position is correct. 12 U.S.C. § 1821(i)(2) unequivocally limits the maximum liability of the FDIC to the amount a claimant would have received in liquidation under the distribution scheme set forth in FIRREA. *See First Indiana Federal Sav. Bank v. FDIC*, 964 F.2d 503, 507 (5th Cir. 1992) ("In enacting FIRREA, Congress unequivocally expressed its intent to limit the maximum liability of the FDIC to the amount the claimant would have received in a liquidation under federal priority regulations"). Here, BOA is a general unsecured creditor. The FDIC has issued a No-Value Determination that finds that no general unsecured creditor will

receive payment on its claims. As discussed in the previous section in this order, the No-Value Determination is binding on this Court. Accordingly, BOA's claims are valueless. Granting BOA relief in the form of set off would be in violation of Congress's clear mandate in Section 1821(i)(2).

What is more, allowing BOA to set off its claims against monies owed to the FDIC would allow BOA "to jump the line in front of higher-priority creditors," which would violate the distribution scheme set forth in Section 1821(d)(11)(A). *Placida Professional Center, LLC v. FDIC*, 512 Fed. Appx. 938, 951 (11th Cir. 2013) (citing *Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999)), *see also*, *FDIC v. Bank of America Nat'l Trust and Sav. Ass'n*, 701 F.2d 831, 836-37 (9th Cir. 1983) (holding that a creditor was not entitled to set off against the FDIC when its claim was subordinated to the rights of depositors under the statutory priority scheme); *FDIC v. RPM Mortgage*, 2010 WL 9502044 (C.D. Cal. 2010) ("granting Skyline relief [as an unsecured general creditor] in the form of setoff or recoupment would be tantamount to allowing Skyline to jump in front of the line to remedy its damages despite the FDIC's clear pronouncements that the receivership estate has insufficient assets").

BOA's reliance on *Scott v. Armstrong*, 146 U.S. 499 (1892) and its progeny of cases for the proposition that courts allow set offs against the FDIC is misplaced. Not one of the cases cited by BOA implicated the distribution scheme set forth in Section 1821(d)(11), so there was no risk that the creditor would jump ahead of higher priority creditors. In fact, none of the cases cited by BOA discusses Section 1821(d)(11). The Ninth Circuit in *Bank of America* expressly distinguished these cases for this very reason: "none of the foregoing cases dealt with setoff against a subordinate obligation, such as we have in this case. Here, we are not concerned with the general rule permitting setoff, but with whether it is applicable to this case." 701 F.2d at 836.

This Court is not aware of—and BOA had not cited any—cases that awarded a setoff that would disrupt the statutory distribution scheme of Section 1821(d)(11). Indeed, in *Interfirst Bank-Abilene, N.A. v. FDIC,* a case on which BOA heavily relies, the Fifth Circuit specifically stated that the setoff in that case should be allowed because it would *not* interfere with the priority distribution scheme provision of the National Bank Act. 777 F.2d 1092, 1096 (5th Cir. 1985). Indeed, the D.C. Circuit has explicitly stated that the distribution scheme set forth in Section 1821(d)(11) must be interpreted to not "frustrate" Congress's "depositor preference goal in § 1821(d)(11)." *MBIA*, 708 F.3d at 245.[3]

### 4.    BOA's Remaining Objections to Dismissal

BOA asserts two further defenses to the motion to dismiss, neither of which merits extended discussion. First, BOA contends that "[t]here is no valid legal theory making the [No-Value] Determination binding on this Court." Opp. at 22. However, as discussed previously in this order, under well-established case law, the No-Value Determination is a final agency decision that is conclusive and binding on this Court. *See South Miami Holdings*, 2013 WL 4046717, *4; *Santopadre*, 937 F.2d at 272; *Ward*, 2012 WL 10334 at *2; *Gulley v. Sunbelt Sav., FSB*, 902 F.2d 348, 351 n. 4 (5th Cir. 1990); *Nasoordeen v. FDIC*, 2010 WL 1135888, at *6-8 (C.D. Cal. Mar. 17, 2010); *Adam*, 927 F.2d at 354; *Village South Joint Venture v. FDIC*, 733 F. Supp. 50, 51-52 (N.D. Tex. 1990).

BOA complains at length about the "unilateral" nature of the No-Value Determination, alleging that it lacks the *indicia* of due process, such as the opportunity for public comment and examination of witnesses. Opp. at 23-27. This is not the arena within which to raise such

---

[3]    BOA also argues that it can assert its claims as affirmative defenses. The Court disagrees. Allowing BOA to set off the claims either as direct claims or affirmative defenses would have the same effect. It would allow BOA to recover more than its *pro-rata* share under the priority scheme. *See Bank of America*, 701 F.2d. at 836.

arguments. The APA, not this lawsuit, provides the process within which to contest the No-Value Determination.

Next BOA argues that it is "premature to rely on the No-Value Determination to dismiss BOA's claims because the No-Value Determination is not final." It asks this Court to either deny the FDIC's motion to dismiss or to defer ruling on it "while judicial review of the APA's 'no value' determination remains a viable option." Opp. at 28. BOA posits a scenario whereby the motion to dismiss is granted, BOA's claims are dismissed, and the No Value Determination is subsequently invalidated, thereby leaving BOA without recourse because the statute of limitations would have run on its causes of action. In light of this concern, the Court will accept the FDIC's proposal that the Court grant the motion to dismiss, but hold the order of judgment in abeyance until the APA action is resolved.

## IV. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS the FDIC's Motion to Dismiss (Dkt. No. 73). BOA's claims against the FDIC as Receiver for Colonial are DISMISSED with prejudice. The order of judgment will be held in abeyance pending resolution of BOA's APA challenge to the FDIC's No-Value Determination.

Dated this 26th day of August, 2013.

Barbara Jacobs Rothstein
U.S. District Court Judge